IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, Administrator of the Funds,<br><br>              Plaintiffs,<br><br>    v.<br><br>TOLTECH PLUMBING CONTRACTORS, LLC, an Illinois corporation, and VIRGINIA REYES, individually<br>              Defendants. | Case No. 18 C 7758 |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine Wenskus, Administrator of the Funds, (collectively "Funds") by their attorneys, Patrick T. Wallace, Amy Carollo, Ryan Liska, and Kate Mosenson, for their Complaint against Defendant Toltech Plumbing Contractors, LLC an Illinois corporation and Virginia Reyes, individually state:

## COUNT I

### (Failure To Pay Benefit Contributions)

1.    Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.     Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.     The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.     Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.     Defendant Toltech Plumbing Contractors, LLC, (hereinafter the "Company") is an Illinois corporation.  The Company does business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a).  The Union and the Company are parties to a collective bargaining agreement, the most recent of which became effective June 1, 2017 ("Agreement").  At all times relevant herein, the employees of the Company performed work covered by the same Agreement. (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust and the Agreements and Declarations of Trusts of the various Funds listed in Paragraph 7 below, is attached hereto as Exhibit A.)

7.      The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the CARCO Industry Advancement Fund ("CARCO"), and the Illinois Small Pavers' Association ("ISPA") to act as an agent in the collection of contributions due to those Funds.

8.      The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the Training Fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the

3

employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

9.     The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.     The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a)     failed to submit reports and/or pay contributions to Plaintiff Laborers' Pension Fund for the period of October 2018 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to submit reports and/or pay contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of October 2018 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to submit reports and/or pay contributions to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of October 2018 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to

4

administer the Fund and jeopardizing the health and welfare benefits of the participants and

beneficiaries;

(d)    failed to submit reports and/or pay contributions to Laborers' Training Fund for

the period of October 2018 forward, thereby depriving the Laborers' Training Fund of

contributions, income and information needed to administer the Fund and jeopardizing the

training fund benefits of the participants and beneficiaries; and

(e)    failed to report and/or pay all contributions owed to one or more of the other

affiliated funds identified above for the period of October 2018 forward, thereby depriving said

fund(s) of contributions, income and information needed to administer said fund(s) and

jeopardizing the benefits of the participants and beneficiaries.

12.    The Company's actions in failing to timely submit reports and contributions

violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C.

§185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

13.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of

the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the

Funds' respective Trust Agreements, the Company is liable to the Funds for delinquent

contributions, liquidated damages, interest, and attorneys' fees and costs, and such other legal

and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against

Defendant Toltech Plumbing Contractors, LLC:

a.    ordering the Company to submit and pay its October 2018 forward benefit reports

and contributions due and owing including interest and liquidated damages;

5

b.      entering judgment in sum certain against the Company on the amounts due and owing on the late submitted reports, including contributions, liquidated damages, interest, and attorneys' fees and costs;

c.      ordering the Company to submit its books and records to an audit for the period of February 1, 2017 forward upon demand and entering judgment in sum certain in Plaintiffs' favor and against Defendant for the amounts due on audit including unpaid contributions, interest, liquidated damages, accumulated liquidated damages on late-paid reports, audit costs, and Plaintiffs' attorneys' fees and costs; and

d.      awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

## COUNT II

### (Failure to Pay Union Dues—Toltech Plumbing Contractors, LLC)

14.     Plaintiffs reallege paragraphs 1 through 13 of Count I as though fully set forth herein.

15.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

16.     Notwithstanding the obligations imposed by the Agreement, the Company failed to submit and pay dues reports for the period of October 2018 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance.

17.     The Company submitted and paid its August and September 2018 reports late; consequently, the Company owes $195.23 in liquidated damages for these months.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment, against Defendant Toltech Plumbing Contractors, LLC ordering the Company to submit and pay its October 2018 forward dues reports and dues, to submit its books and records to an audit upon demand for the period of February 1, 2017 forward and entering judgment in favor of the Funds and against the Company for the Union dues and liquidated damages owed together with all audit costs, if any, attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

### COUNT III

### (Default on Installment Note—Toltech Plumbing Contractors, LLC)

18.     Plaintiffs reallege paragraphs 1 through 17 as though fully set forth herein.

19.     This Court has pendant jurisdiction over this Count pursuant to 28 U.S.C. § 1367(a).

20.     The Company entered into an Installment Note ("Note") and Settlement Agreement to resolve delinquencies alleged due and owing for the monthly reports of January through June 2018. A copy of the Note and Settlement Agreement are included as Exhibits B and C.

21.     As part of the Settlement Agreement, the Funds agreed to reduce the liquidated damages on these reports from 20% to 10%. However, if the Company is delinquent, as defined by the Note, the Company agreed to pay the discounted liquidated damages in the amount of $6,192.07, in addition to the remaining amounts owed on the Note. *See* Paragraph 4, of Exhibit C.

7

22.     The Note requires the Company to stay current on the Company's obligations to the Funds and District Council under the terms of the collective bargaining agreement and make its note payment by the first of the month. If the Company fails to do so, the Funds have the right to accelerate and collect all amounts owed under the Installment Note. *See* Exhibit B.

23.     The Company failed to pay its November 2018 forward note payment.

24.     The Company failed to submit and pay its October 2018 benefits and dues reports.

25.     Pursuant to 28 U.S.C. § 1367, and the terms of the Note, Company is liable to the Funds for the full accelerated amount of the Note, which includes:

a.      the remaining balance of $38,036.80 on the Note (the spreadsheet detailing the amounts owed on the Note is attached as Exhibit D);

b.      the $6,192.07 in liquidated damages (Exhibit C); and

c.      attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Toltech Plumbing Contractors, LLC:

a.      entering judgment in sum certain against the Company on the amounts due and owing on the defaulted Note, plus interest and liquidated damages, and the attorneys' fees and costs incurred by the Funds; and

b.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT V

### (Liability as Individual Guarantors of Debt—Virginia Reyes)

26.     Plaintiffs reallege and incorporate herein paragraphs 1 through 13 of Count 1, paragraphs 14 to 17 of Count II, and paragraphs 18 to 25 of Count III.

8

27.     This Court has pendant jurisdiction over this Count pursuant to 28 U.S.C. §

1367(a).

28.     Ms. Reyes is and was at all times relevant an Officer and Shareholder of the

Company.

29.     Toltech entered in into the Note; Ms. Reyes signed the Guaranty of Payment and

Indemnification ("Guaranty") on or about August 13, 2018. A true and accurate copy of the

Guaranty is attached hereto as Exhibit E.

30.     Paragraph 1 of the Guaranty provides that

The undersigned guarantees, absolutely and unconditionally: (a) the payment when due
of the entire principal indebtedness and all interest evidenced by the Note during the
twelve (12) month payment period including liquidated damages for the late or unpaid
payments due on the Note; and (b) the full and complete payment of any and all fees and
costs incurred pursuant to default under terms of the Note, whether litigation is involved
or not, . . . The Guarantor also agrees to be personally liable for all monthly benefit
contributions, union dues and/or wages owed from the Company to the Funds, the
District Council, all ancillary funds, and/or the participants that are due at the time the
Note and Guaranty are entered into and/or are incurred and become due and owing for
the duration of the Note, including all interest, liquidated damages, audit costs, attorneys'
fees and costs.

31.     By signing the Guaranty, Ms. Reyes personally guaranteed the Company's

monthly fringe benefit contributions and dues that were due at the time the Note was entered

into, those contributions and dues which were incurred or became due and owing for the duration

of the Note (September 1, 2018 through February 1, 2019), and the amounts owed on the Note.

*See* Exhibit B.

32.     The Company failed to submit and pay its October 2018 benefits and dues reports.

33.     The Company failed to pay its November 2018 note payment.

34.     Pursuant to the terms of the Note and Guaranty, Ms. Reyes is personally liable for

all amounts alleged in Counts I through III of Plaintiffs' Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of the Funds and against Defendant Virginia Reyes for all amounts due and owing from the Company to the Funds and the Union for the amounts owed on the October 2018 benefits and dues reports, the Note, and any liquidated damages, accumulated liquidated damages, interest, audit costs, and attorneys' fees and costs, as established in Counts I through III in Plaintiffs' Complaint.

November 21, 2018                                    Laborers' Pension Fund, et al.

                                                     By: /s/ Amy Carollo

Patrick T. Wallace
Amy Carollo
Ryan Liska
Kate Mosenson
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

10

# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Toltech Plumbing Contractors** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority or Section 9(a) representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA, as amended, for the employees now and hereinafter employed under the terms of this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union's having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association without written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement, and all extensions hereof, and it waives any right it may have to terminate this agreement based upon the number of persons employed.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $1.90 per hour effective June 1, 2013; $2.00 per hour effective June 1, 2014; $2.05 per hour effective June 1, 2015; and $2.10 per hour effective June 1, 2016, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2013, the minimum wage rate shall be $37.00 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Fund), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by the collective bargaining agreements and parts to the agreements and declarations of trust creating the Funds as it it had signed the original copies of the trust instruments and amendments thereto. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2013 (unless dated differently below) through May 31, 2017, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of such successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile signatures on this Agreement as if they were the original signatures.

Dated: **August 17**, 20 **16**

Employer: **Toltech Plumbing Contractors**

ACCEPTED:
Laborers' Local Union No. **2**

By: _____
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: **CAJCA***

FEIN #: _____

By: **Virginia Reyes, President** (Print Name and Title)
**Virginia P. Reyes** (Signature)
**3504 South Western Ave.** (Address)
**Chicago, IL 60609** (City, State and Zip Code)
_____ (Telephone/Telefax)
**virginia@toltechplumbing.com** (Email Address)

RECEIVED AUG 1 7 2016

EXHIBIT A

Effective June 1, 2013    WHITE - LOCAL UNION    •    CANARY - TRUST FUND    •    PINK - DISTRICT COUNCIL    •    GOLD - EMPLOYER

Fax from : 8474590023          08-13-18 08:03a   Pg: 5

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and Toltech Plumbing Contractors (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local 2 of the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the contribution reporting period of January 2018 through June 2018,

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the contribution reporting period of January 2018 through June 2018,

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Funds, Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $26,631.87 to the Health and Welfare Fund (comprised of $22,781.62 in delinquent contributions, $3,327.18 in liquidated damages and $523.00 in interest) (based on an interest rate of 12%). The Company will pay $11,910.18 to the Retiree Health and Welfare Fund (comprised of $10,192.01 in delinquent contributions, $1,484.28 in liquidated damages and $233.89 in interest). The Company will also pay $32,428.51 to the Pension Fund, (comprised of $27,743.99 in delinquent contributions, $4,047.68 in liquidated damages and $636.84 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 3 and 4.

2. The Company will also pay $1,323.30 to the Training Fund (comprised of $1,203.09 in delinquent contributions and $120.30 in liquidated damages), $172.84 to the LECET Fund (comprised of $157.13 in delinquent contributions and $15.71 in liquidated damages), $419.73 to the LDCMC Fund (comprised of $381.57 in delinquent contributions and $38.16 in liquidated damages), $197.52 to the CAICA Fund (comprised of $179.56 in delinquent contributions and $17.96 in liquidated damages) and $4,734.96 in union dues (comprised of $3,677.66 in delinquent contributions and $1,057.30 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 3.

3. Simultaneously with the execution of this Note, the Company will pay twenty percent (20%) of the total outstanding indebtedness, excluding note interest and the delinquent amounts described above in paragraph 2, or $5,221.77 to the Health and Welfare Fund, $2,335.26 to the Retiree Health and Welfare Fund and $6,358.33 to the Pension Fund.

4. For six (6) consecutive months commencing on September 1, 2018 and ending on February 1, 2019, the Company will pay $3,568.35 per month to the Health and Welfare Fund, $1,595.82 to the Retiree Health and Welfare Fund and $4,345.03 per month to the Pension Fund.

5. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

6. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.



EXHIBIT

B

Fax From : 8474598023            08-13-18 08:07a   Pg: 20

7. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

8. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but not limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note. The Company must also complete and submit monthly Job Notice Cover Sheets and Individual Job Notices on the forms provided by the Funds by the first day of each month for the duration of this Note. Failure to comply with this term will result in a default on this Note and enable the Funds to accelerate all amounts due on this Note.

9. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the ___13th___ day of the __Aug__ , 2018.

Toltech Plumbing Contractors

By: _Virginia R. Reyes_

Title: _President_


Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _Catherine Wenz_

## SETTLEMENT AGREEMENT

This Settlement Agreement, by and between Toltech Plumbing (hereinafter, "Toltech" or the "Company"), Virginia Reyes, and the Laborers' Pension Fund, the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, related Funds, and Catherine Wenskaus, not individually, but as the Administrator of the Funds (collectively referred to hereinafter as the "Funds") is hereby entered into;

WHEREAS, Toltech was at all times relevant a party to various area-wide collective bargaining agreements with the Construction and General Laborers' District Council of Chicago and Vicinity ("Union") pursuant to which they also agreed to be bound to the terms of the Funds' respective Agreements and Declarations of Trust, and have at all times relevant been obligated to submit payment of benefit contributions, and withhold and remit dues from the paychecks of employees performing work defined as covered under the terms of the collective bargaining agreement in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust;

WHEREAS, the Company submitted unpaid reports for January through June 2018 and the Funds have alleged unpaid benefit contributions, dues, interest, and liquidated damages owed by the Company;

WHEREAS, the Parties wish to resolve the delinquent reports, have reached a settlement with respect to the amounts owed and wish to incur no additional costs or expense of litigation; and

NOW THEREFORE, subject to and incorporating the aforementioned recitals, and for and in consideration of the mutual promises contained in this Agreement, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      Toltech shall pay the delinquent reports for January through June 2018 as set forth in accordance with the terms of the Installment Note contemporaneously entered into with this Settlement Agreement. In addition, Virginia Reyes shall enter into a Guaranty of Payment and Indemnification guaranteeing the full amount due on the Installment Note of $77,818.91. The initial payment due under the Installment Note shall be delivered to the attention of Fund Counsel Amy Carollo, Office of Fund Counsel, Laborers' Pension and Welfare Funds, 111 W. Jackson Blvd., Suite 1415, Chicago, IL 60604, along with the signed Settlement Agreement, Installment Note, Guaranty of Payment and Indemnification, and Commercial Security Agreement documents along with the initial down-payment due on the Note of $20,763.71. Thereafter, all payments due under the Note should be sent to the attention of Mr. Joe Gilleran at the Funds' Westchester office, 11465 Cermak Road, Westchester, Illinois 60154 unless the Funds direct otherwise.

2.      The terms of the Installment Note and Guaranty of Payment and Indemnification are incorporated herein.

3.      Toltech and Ms. Reyes agree to submit to the Funds the Pending and Future Awarded Jobs and Pending and Future Awarded Job Information Sheet ("Jobs Information



EXHIBIT
C

Sheets"). Toltech and Ms. Reyes must submit the Jobs Information Sheets from August 2018 through February 2020; the Jobs Information Sheets are due on the first of the month. They must be submitted to Joe Gilloran at the Fund's Westchester office, 11465 Cermak Road, Westchester, Illinois 60154. Toltech and Ms. Reyes acknowledge receipt of the Job Information Sheets and that the Funds will not send the Jobs Information Sheets to them. If additional copies of the Job Information Sheets are needed, Ms. Reyes and Toltech agree to contact Mr. Gilloran.

4. The parties agree that in settlement of this matter, the Funds agree to reduce the liquidated damages from 20% to 10%. The liquidated damages at 20% equals $16,300.64; the liquidated damages at 10% equals $10,108.57. If Toltech and Ms. Reyes are delinquent with any note payment (as defined in the Installment Note), Toltech and Ms. Reyes agree that they will be liable for the balance of the note and the discounted liquidated damages (in the amount of $6,192.07).

5. This Agreement shall be binding upon the heirs, successors, and assigns of the parties hereto. However, neither this Agreement nor its terms shall be construed as, or relied upon as, precedent as to the application of the relevant collective bargaining agreements or future dealings between the parties.

6. The persons signing below represent that they are authorized to execute this Agreement and bind their respective entities and themselves to the terms hereof.

7. This Agreement, including all recitals, terms, and conditions, constitutes and represents the complete and entire agreement between the Parties. Nothing in this Agreement may be altered, modified, or supplemented except by a writing signed by all Parties.

8. The Parties confirm and agree that: (a) this Agreement is the result of negotiation and compromise; (b) in interpreting this Agreement, no Party shall be considered to be the draftor of it; (c) no language shall be strictly construed against any Party; and (d) this Agreement shall be interpreted consistent with the ordinary and reasonable meaning of the words used in it.

9. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

10. This Agreement may be executed in multiple counter parts with a facsimile copy signature or scanned/emailed copy signature as binding as the original.

Page 2 of 3

11. This Agreement shall be construed in accordance with Illinois law without regard to choice of laws, except as preempted by applicable federal law.

For the Laborers' Pension Fund, the Laborers' Welfare Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine Wenskus, not individually but as Administrator of the Funds

_Catherine Wenskus_
Catherine Wenskus, Administrator                    Date: 8/21/18

For Toltech Industries, Plumbing Inc.

_Virginia Reyes_
Signature                                           Date: 8·13·17

Virginia Reyes
(Print Name)

For Virginia Reyes, individually

_Virginia Reyes_
Virginia Reyes                                      Date: 8·13·17

Page 3 of 3

true

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of ___8 · 13 · 18___ by the undersigned, _Virginia Reyes_ , (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (the "District Council") and any related ancillary Funds to which _____ is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

WHEREAS, Toltech Plumbing Contractors (the "Company") has agreed to pay a total of $77,818.91 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty; and

WHEREAS, the Guarantor(s) has/have a financial interest in the Company and will be benefited by the Note;

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. **Guaranty of Payment and Indemnification.** The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twelve (12) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy, proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively herein referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all audits that have been issued or are issued covering any time period prior to the issuance of the Note, during the Note, or issued after the Note is paid in full but covering any time period prior to or during which Note payments were due, delinquent or being paid and including, but not limited to, interest, liquidated damages, audit costs, attorneys' fees and costs.

2. **Continuing Guaranty.** This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor;

3. **Waivers.** Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

1


EXHIBIT
E

4. **Subrogation.** Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. **Independent Obligations.** The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. **Acceleration.** In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. **Effect of Bankruptcy.** This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. **Termination.** This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. **The Company's Financial Condition.** The Guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. **Expenses.** The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. **Delay, Cumulative Remedies.** No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. **Binding Effect.** This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

2

13. **Default.** The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. **Warranties.** Guarantor makes to the Funds the following representations and warranties:

(a) **Authorization.** Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder.

(b) **No Conflict.** The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) **Litigation.** There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) **Enforceability.** This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. **Notices.** All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

Ken Goldin
9100 Plainfield
Brookfield, IL 60513
770-708-485-8300

In Case of the Funds:

Collection Counsel
Amy Carollo
Laborers Pension & Welfare Fund
Sub Office
111 W Jackson Blvd
Suite 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, Ken Goldin, But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

16. **Additional Waivers.** Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief,

3

(II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. Severability. If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. Applicable Law; Venue. This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. Time is of the Essence. Time is of the essence of this Guaranty as to the performance of the undersigned.

20. Death of a Guarantor. In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

Virginia Reyes
_____
Print name

_____
Print name

_____
Print name

_____
Signature

_____
Signature

_____
Signature

_____
Social Security Number

_____
Social Security Number

_____

Date: Aug 13, 2018

_____

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR:

Dated: 8·13·18

4